Good morning, Your Honors. Good morning. Good morning. And may it please the Court, Kaitlin Cuadra on behalf of Javier De Santiago-Perez. May I please reserve two minutes for rebuttal? Thank you. The District Court erred by granting summary judgment for the government on Javier's derivative citizenship claim because it weighed conflicting evidence and did not draw all reasonable inferences in Javier's favor. Can you interrupt just a little bit? Yes, of course. We're not hearing you terribly well after he's gone about it. Of course. Apologies. Thank you. Yes. The government's position is that the District Court credited Javier with five years of physical presence for the period before Javier's father, Cesario, turned 14 and with another three years for the period constituting Cesario's time in the Bracero Program. It's the time before his 14 years. Is that disputed or is that agreed to pretty much? I think it's pretty much agreed to, Your Honor. Okay. Okay. Yes. We'll see if my counsel disagrees. Okay. The remaining issue then is whether a reasonable trial of fact could conclude that Cesario was physically present for an additional two years between 1963 and 1965, and there is ample evidence in the record to support a finding that he was, including the testimony of Javier's sister, Ms. Antonia Suarez. Okay. Another quick question. Yes, of course. Is the standard of proof in dispute? I don't believe it is, Your Honor. What is the standard of proof, according to you? Well, so at summary judgment, we have to determine whether a reasonable trial of fact could conclude that Cesario was physically present in the United States for 10 years and that his burden of proof at trial would be a preponderance of the evidence. So this is not a Rule 56, is there a genuine issue of material fact, but rather whether you have proved at this stage that a reasonable trial of fact could adopt this by a preponderance of the evidence. Correct. But I believe that is the general motion for summary judgment standard. Well, usually you don't have the preponderance of the evidence aspect come in. So that's what I'm asking is, I mean, in a normal, in a traditional summary judgment case, we just ask, is there a dispute of material fact? That's the end of it. But here we have to ask whether, yes, whether there's a material dispute of fact, but also whether you have carried your burden or could carry your burden by a preponderance of the evidence. Is that your understanding? Then let me amend just a tad because I think that generally my understanding is that courts do take into account the ultimate burden of proof for the trier of fact when they're considering summary judgment. That's the Anderson Liberty Law holding. So to that extent, that's where the preponderance of the evidence comes in, Your Honor. With that standard, is Javier presumptively an alien? Correct. Okay. Yes, that is undisputed that he was born in Mexico. With the standards of review in mind, I find this a very sad case. But if I like, for example, there's a 32-month figure from 1963 to 1965 and almost inevitably too high because you include the weekends and there's specific testimony that he always went back to Mexico over the weekends. So how do we get over that hurdle? Yes, Your Honor. So there are two key documents. So let me just summarize. You're discussing the court's holding with respect to the testimony of Javier's sister, Ms. Suarez. Correct. She testified that Javier, I mean, Cesario commuted daily to the United States from Tijuana from 1963 through 1965. But there were two key documents in the record that permit the inference that he was there for additional time. And I am happy to walk you through those two documents. Well, I've read that. I guess what I'm concerned about is that there's an assumption that he stayed there always. But the record seems to be that he went home on the weekends at the least. So if you take that, there's not 32 months there. Well, I think that's if you credit Ms. Suarez's testimony to the exclusion of the documents that exist. So, for instance, there's a document, his Social Security records. They demonstrate that in 1964 he worked in Woodland, California. Woodland is 540 miles north of Tijuana. So he didn't reasonably drive from Tijuana up to work in Woodland and then drive back again. Hold on. With respect. Okay, yes. You're basically taking all of the possibilities, the hypotheticals, and saying you've got to credit them to Cesario. But it's true it's a long way. But also the Social Security documents don't say where he actually worked. It just shows where he got paid. And a number of these farms are owned by the same people, and they could be in the Imperial Valley or they could be near Ventura or something like that. So it's not at all clear from the record to me that you can show that he did not, as was testified, I believe, by the sister or sister-in-law, that he came back home every weekend, which makes perfectly good sense. He had a family there. Right. So if that's true, you're missing some time, right? Well, but I think so at this stage he is entitled to those inferences. For instance, that if his Social Security records say that he lists Woodland, California, that he went up to Woodland, California. He also had a P.O. box in Newman, California. I think it's reasonable to infer that he – And I understand that. But, again, we're talking about physical presence here. Right. There's a difference between having a mailbox and being present. And like I said, to me it's very sad. I wish there were better records, but it's not at all surprising that in these time periods that you don't have a lot of wonderful records. Right. I think that, unfortunately, redowns against your client's interest, does it not? I think that it's also important to take into account, though, the way that these cases are approached at trial, which is the trier of facts frequently takes inferences from evidence and estimations of time from testimony. And what would you cite for that? I mean, certainly we treat pro se fleetings with great liberality. But I'm unaware that we treat factual allegations with liberality. And you're suggesting that the trier of fact, we just say, oh, I like this person, he combed his hair the right way, and I think I'm going to give him credit for 30 days in Ventura. I definitely don't think that the standard is that you like someone and you give them credit. But I think that, for instance, in Fierro-Trejo v. Holder and in Morales-Martinez v. Gonzalez, that case actually, the second case, is very similar to our facts. We had, there was a, the petitioner's sister was a child at the time that the events in question took place. She was 8 or 9 years old. She testified that her mother went to the United States for 3 to 4 months at a time and then came back to Mexico for 1 to 2 months at a time. And that, you know, from what she could remember, that pattern continued until the petitioner was born. That pattern, based on her age of 8 to 9, started in about 1953 or 1954. There was also a letter saying that, from the petitioner's mother's employer, saying that the petitioner worked 1 to 2 days a week at her house from 1951 through 1954. Now, based on that testimony, those two pieces of evidence, the court held that the petitioner was more likely than not, this was a trial, more likely than not, physically present in the United States for about 8 to 9 months per year from 1951. But there was no, as I understand it, no contrary evidence. And that's what I'm struggling with here is you've got directly contrary evidence to the effect that Cesadia went home each weekend. But I think that in crediting her testimony, I mean, there's not a, for instance, in Caballero, there was overwhelming evidence that the petitioner, he testified he came back in 1957. There were school records that said he came to the United States in 1957. There were immigration documents that said he came in 1957. Because of that, the district court declined to infer that he came back in 1956 based on a side statement that he made that he had taken a special class before he started school in 1957. The district court declined to infer an entire additional year. I've got somewhat of a similar question. Both the magistrate judge, the district judge all found that the petitioner was, his father was 23 days short. Correct. And you're mentioning these documents, the social security records, and the thing about it is that, you know, even though we have to apply the standard, looking at the evidence in the light most favorable, we're still not allowed to speculate or have a jury speculate. Correct. And I guess I'm wondering how these documents really just kind of lead us into speculation. Well, I think that because speculation, I mean, reasonable inference is based on specific evidence or specific facts, and speculation is not. But these inferences, we'll see them at a time, but are based on specific evidence. Can I just say one more question? Yes. You mentioned the social security records, and what was the second document? Oh, well, it's kind of a, it's his AFL-CIO labor union card and his. I remember that. The INS affidavit. Okay. Yes, Your Honor. Thank you very much. Thank you very much. Very well. Let's hear from the government. Good morning, Your Honors, and may it please the Court. My name is Jonathan Ross, and I represent the United States Attorney General. As a predicate matter, the sympathetic facts of this case are not lost on the government. The government has no interest in deporting a citizen from this country. However, Javier is not a citizen of this country, and Cesario did not bestow citizenship on Javier. The Court's correct in that the real period of inquiry that is important here is the period from 1963, January 1963, through September 1965. You don't disagree that he's proven by a preponderance of the evidence under the standard sufficient for summary judgment on the first three years, or basically eight of the ten years? That's correct, Your Honor. For purposes of summary judgment, assuming all facts in the light most favorable to Javier, he requested five years plus three years, and the district court credited him with five years plus three years. So you're just looking at whether you get two years out of this mixed factual record? That's correct. And that's what the statute requires. The statute specifically envisions a tacking together of periods. So the fact that it's not two solid years in the United States is not of issue. If he could show that he actually spent this time not just living in the United States, not just with an address or residence in the United States, but physically present within our borders. What about his response that, look, if you truly give me every benefit of the doubt, you know, I could reach there, so we've got to send this to a trier of fact? Your Honor, taking those pieces of evidence, taking the Social Security records, for instance, taking the temporary Social Security card, taking the union record, none of that creates a genuine issue of material fact here. And with the court's indulgence, I'd like to explain why. Number one, the Social Security card, which was temporary and issued in early 1962, like the union card, which was also issued in 1962, is part of that window of time that Cesario requested eight years and received the full benefit of those eight years. Those cards, which were issued in early 1962, don't bear on whether he was physically present within our borders in 1963, 1964, or through Javier's birth in September 1965. And that's really the issue is physical presence, right? Yes, Your Honor. He must be physically present within the border. And again, it's not lost on the government that Javier spent the vast majority of his life in this country. However, sympathetic facts alone do not take place of the congressional intent that, as demonstrated in the statute, that you must be physically present for a certain period of time. And in this case, if I understand the petitioner's position, as my colleague mentioned, the magistrate judge, the district judge, perhaps also sympathetic, said, you know, put this all together, he's 23 days short. I gather what they're asking us to do is to say, well, those folks were wrong. We've determined as a matter of fact, I suppose, that he has the 23 days, but we can't do that, can we? That's correct, Your Honor. There's no factual determinants being made here. The evidence really must speak for itself in the light most favorable to Javier. And any inferences that are drawn must be reasonable inferences. Therefore, looking to this period, the one piece of evidence that we have pertaining to this period of time, January 1963 through September 1965, is Antonia's testimony. And Antonia very clearly testified that Cesario lived in Tijuana. He commuted every day through Mexico to San Ysidro and Chula Vista, and that's where he worked. And then every night, he came back to Mexico, where he remained over the weekends. Here, the magistrate judge, and also considered by the district court judge, said, you know, we're going to do you one even better. Not only are we going to take this testimony, but we're going to give you five full 24-hour periods to account for any transit time. The fact of the matter is, were this to go to trial, he's weeks short now. Were this to go to trial, he would be months, potentially years short, because the district court gave him five full 24-hour periods, when, in fact, he spent time commuting through Mexico. He was an agricultural worker. It's without a doubt that agricultural work is weather-dependent. It's dependent on holidays that are observed by both the United States and Mexico. The district court... So was there a period of time when he would have to be commuting for 500 miles a day that the petitioner referenced? Judge... Was it in Huntington, I think? I can't remember. There is a period of time where he lived in Huntington. I believe that's in the 1966 region, and, again, this is something that the magistrate judge considered in her decision, specifically saying that having a residence in 1966 doesn't speak to fiscal presence during the period that's important here. If I can briefly wrap up before resting on the briefs, there's one other point, just for the sake of covering it, that I'd like to address, and that is before the immigration court, as affirmed by the board, Javier put forward applications for various immigration remedies. It's the government's position that by not raising those issues to the board, they're unexhausted, and by not including them in his opening brief to this court, they're waived, and, therefore, the court should affirm the grant of summary judgment and deny the petition for review. Thank you, Your Honors. Thank you very much. Now, you don't have any rebuttal time, but because he was so nice to give part of the time back, we're going to let you have a couple of minutes of rebuttal because I know you're very anxious to tell us what a good guy Javier is, right? And before you do that, did I read in your reply brief that he is now no longer in custody? That's right, Your Honor. He was, yes. Where is he now? Is he in Mexico, or is he here, or? He's living with his sister in the greater Los Angeles area. Okay. Yes. All right. Thank you. Okay, please proceed. Okay. The one thing I want to address is just to make sure that it's clear that the question isn't whether he was here for 23 additional days. This is a review of a grant of summary judgment, and the question is whether de novo, taking all facts in the light most favorable to Javier, a reasonable fact finder could find that he was here for 10 total years. And I think that the Fifth Circuit's decision in Garza Flores is very instructive. There they found that there was a genuine dispute based on four documents, a certificate of baptism described as an illegible border crossing card, a draft card that was issued in 1941 and lists both Texas and Mexico residential addresses, and an application for a certificate of citizenship. And based on those documents, you know, the Fifth Circuit didn't attempt to extrapolate specific periods of time for each document to see whether he might reach 10 years. But again, with respect. Yes, Your Honor. The documents you referred to here, as before, the Social Security and so on, as the government points out, they show something, but they do not show physical presence. And you have a specific testimony here from family members that say he either went back every night or he went back certainly every weekend. The district court gave him a week, five days anyway, worth of extra time giving him a break. But there's no accounting for lack of work because of the rainstorms or anything like that. It sounds to me like the priors, in fact, if you will, did everything they could to give him a break. But there's just not enough proof to show that he was physically present in the United States for the requisite period of time. Isn't that right? Respectfully disagree. I see that our time is up. Thank you very much. Thank you very much. Thank you. The case disargued is submitted.
judges: SMITH, NELSON, UNKNOWN